Okay, Mr. Garrigan. Excuse me. May it please the court, my name is Tim Garrigan, I represent the appellant and the plaintiffs in this case, that is a class of poor children, those under 21 in Texas, eligible for Medicaid benefits but not getting them. That's what this case is about. Specifically, it concerns the district court's more recent ruling in, well, December 2013, to vacate a corrective action order and portions of a decree instead of ordering further corrective actions to bring the defendants into compliance with the decree. Now, the case concerns the Medicaid statute. In particular, the early, let's see, early periodic screening, diagnosis and treatment program, which is a comprehensive and far-reaching program to provide medical care to poor children. And basically, the plaintiffs have contended in this case that the defendants have not met the federal statute. Now, the, specifically the way this program works is that it requires a series of checkups, starting at birth, in order to find medical problems early, get them treated early when it's far more efficient, and that will be more efficient for society. It will permit better development and education for the... What's the problem here, from your point of view? The problem here is that, well, the provision of the EPSDT program we're concerned about has to do with pharmacists and pharmacies and their provision of medicines and other medical equipment and supplies to class members required by the federal statute. In this case, there's a decree entered, well, the case was filed in 1993. A decree was entered in 1996. And at that point, by 1998, there were already enforcement actions filed against the defendants for not complying with the decree that they had agreed to. And there's a pattern that develops here. The defendants did not live up to their obligations under the statute. In exchange for federal funds, they agreed to take care of these children. They did not agree, they did not live up to that obligation. They then entered into a decree under much the same premise. They were supposed to, more specifically, comply with the federal statute. Well, they did not do that. I thought this case was about the 72 hours where if you have a prescription and you go in and the pharmacist needs to talk to the doctor and he can't get the doctor, that within 72 hours, he has to at least give you enough pills to hold you over until they can get the physician to approve the refill or the initial filling of the prescription. I thought that's what you were upset about. Well, I don't think upset is the correct word. Well, I don't either, listening to your argument. You're not upset about anything. We're just trying to find out what it is you want, because the statute or the consent decree requires that information be communicated to pharmacists and then to the public by the pharmacist. I don't see where there's a compliance requirement. It's like a communication requirement. The decree requires effective and effective information be provided, or excuse me, that the EPSD program be effectively conveyed to the pharmacists. The decree also has provisions that say the pharmacists are essential. First of all, without understanding the program, they cannot provide the care required. And it's essential that they understand the program. To meet that requirement, the state is supposed to provide this effective information. That was not being done. That's not exactly correct, is it? The information, I mean, to provide effective information, I guess means that they have some control over the people who receive the information. And that would not be the case. In other words, they have a duty to effectively communicate. Now, does the communication say it in plain words, or is there something wrong that the communication is not effective, not in terms of the recipient, but in terms of an objective person? Well, the way the district court, the prior district court, had interpreted effective with regard to communication is, is the information, does it change the behavior of the people that it's directed to? I mean, I don't think that's where the phrase is used in the paragraph that you're talking about. In the context of that paragraph, I mean, it's what I just said. Well, nobody can guarantee how a recipient is going to receive a particular communication. Some may hear it very effectively and move. Others may be more lethargic. All we can determine is whether the communication itself was objectively effective, and that did it communicate a clear message. Well, again, to- Are you saying it did not communicate a clear message? It did not communicate a clear message. It didn't even indicate the message it was supposed to. The fact, the communication, what was required in the corrective action order was intensive, targeted educational effort regarding their policy for the 72-hour prescriptions. The information, you know, their only response to that, and this is supposed to be an intensive educational effort, was to send out a single mailing, and the single mailing, and if people did not get the mailing, there were some follow-up phone calls and maybe even a few meetings, but very few of those. That information did not include the essence of the policy that pharmacists must provide the 72-hour medications when they're called for. Is there anything in the consent decree that tells the state what they are supposed to communicate, educate, and so forth? In the corrective action order, which is essentially a supplemental consent decree, it's an agreement by the parties that the court has adopted and is expected to enforce, it does. It says that they're supposed to be educated specifically about the policy, and the policy is stated very clearly in the first bullet point in that corrective action order, that the pharmacy must provide the prescription. The information never told the pharmacists that they must provide the 72-hour prescription. It told them they could. It told them how to do it. But the critical part, and where the whole system fell apart, is where the pharmacists, when the pharmacists think they have discretion or they don't have to, or it's only permissive that they provide the 72-hour medication, means people are going to be denied medications that they need. And so the answer is yes. That's pretty specifically identified in the corrective action order. There's... What else do the pharmacists have to tell, like, a customer at the CVS? If a mama comes in with a baby, is the pharmacist supposed to say, you have to get that baby vaccinated? No. What are they supposed to say besides the 72-hour? No, this isn't so that the pharmacists... I mean, it is helpful for the pharmacists to be able to explain the prescription medical program under the EPSDT to class members and their caregivers. But the primary purpose, and what's addressed here, is there... You know, there are so many problems with the defendant's preferred drug list for providing medications that it's including... It results in children not getting the medications that they need. You know, they are supposed to... The main emphasis here was educating the pharmacists about the program, educating the pharmacists that it's their obligation under this scheme to provide the 72-hour medications. Right. I know that, but what else are they supposed to do? These big brother pharmacists. I mean, what's the point of this besides the 72 hours? You have to give them those pills if you can't get them. That was... Is there anything else they're supposed to do, like, come get your flu shot? I don't know. What is it? I mean, those things would all be helpful. But most of what this corrective action order is talking about is the defendant's education of the pharmacists. The essence of it, by January 31, 1996, defendants will implement an initiative to effectively inform pharmacists about EPSDT and in particular about the coverage of items found in pharmacies. That's the essence of the obligation that they committed to and that the consent decree covered. Now, did they or did they not do that? And if they did not do it, how did they fail in doing so? They did not do that because the pharmacists were not providing. . . Well, there was a dispute about that. The pharmacists were not providing the drugs all the time that they should have. That was disputed. In order to resolve that dispute, parties entered into this corrective action order, and a big part of it was two assessments. They were supposed to assess the pharmacists' understanding of the policy and to do that by seeing whether they. . . They did do that. They did. . . They did everything they were supposed to do under the consent decree. As far as I can tell, what you've said here and what you've said in your brief, but what you are objecting to is that it did not serve the purpose that you had intended those provisions to serve. Correct. I'm sorry if I'm. . . Maybe I didn't understand your question. The ultimate purpose, the overall purpose of the decree, as recited in several paragraphs, but mostly paragraph 6, is to enhance access and improve the use of these medical services. When the defendants go through these motions. . . But they didn't agree to that. The consent decree didn't agree to that. Yes, it did. Where? Paragraph. I didn't say it. All they agreed to do is to try to do something about it by effectively communicating and doing these studies, which they did. And then it winds up, plaintiffs will not unreasonably disagree about whether the pharmacist's understanding is acceptable. I mean, I just. . . in the corrective action order and in the decree. Those provisions are supposed to be interpreted under contract principles in light of the entire decree and specifically in light of the overall purposes, the greater purposes of the decree. Now, where do you get that? Most recently it came from the Jeff D. decision out of the Ninth Circuit, which is very similar to what's going on here. There, the court, the district court had dissolved an injunction or a decree based solely on the defendant's descriptions of what corrective actions they took. But it was essential, and this is what the district court failed to do, the district court did not consider whether the corrective actions taken ever addressed or met the greater purposes of the decree. Okay, you have a red light, Mr. Garrigan. We'll hear from Mr. Markov. You've saved some time for rebuttal, Mr. Garrigan.  I think what we're hearing today is disagreement with the district court's conclusions of fact about whether the state official defendants have complied with the terms of the consent decree and corrective action orders. The district court's decision on that point is reviewed for clear error, and its findings after a six-hour hearing considering a thousand pages of exhibits showing the state official's compliance is not clearly erroneous. We have in the plaintiff's brief two main disputes with that. They offer statistical disputes and then a few anecdotes. But we addressed all of those below, and the district court resolved those correctly and certainly not clearly erroneously in our favor. For example, some of the anecdotes they offer involved two anecdotes where the members weren't even potential members of the Medicaid and weren't even part of the prospective client. I mean, his own argument is that the district court abused its discretion in not considering his contention, argument, and I suppose the evidence maybe that he presented, that the purposes of the decree as he sees them have not been satisfied by this consent decree. That's his argument. Yes, I think their argument has two parts. They think there's a legal error in not imposing an additional requirement on us to check after we've done everything that we agreed to do as a negotiated part of this to further show that we satisfied some sort of open-ended purposes of the decree. And then they argue that even if that's not true, the district court clearly erred in finding that we did what we agreed that we would do to resolve this dispute. On the first point, the Supreme Court's decision in Hornview, Florida in 2009 is very clear that Rule 60b-5 has three independent bases of relief and the satisfied prong is different from the third prong, prong three, on whether it's equitable to continue to apply an injunction going forward. Here the district court rested its finding on the satisfied prong, which doesn't require considering broader purposes or objectives of the decree. But even if it did, Hornview, Flores makes clear that the legitimate purposes or objectives of a decree are compliance with federal law. It says this at page 454. This was a prong three case that the court of appeals needed to ascertain whether ongoing enforcement of the original order was supported by an ongoing violation of federal law. And at page 450 it explains that to the extent a consent decree is addressed at conditions that are not a violation of federal law or don't flow from a violation of federal law, it, quote, exceeds appropriate limits. So in interpreting and applying this decree here, even under prong one the district court was mindful that when you have an open-ended word, perhaps like intensive educational efforts, although it should give that word the plain import of what intensive requires, it also has to consider that if it lets that word morph and take over every other word of the corrective action order, that that would result in what the Supreme Court in Flores called exceeding appropriate limits of a consent decree. So just as . . . I'm assuming we agree with you and were to affirm the district court. What then can the class do when they, if we assume that it's true, that it just didn't work, your client, the State, did everything it could, but it didn't work. Now, where do they go? How do they go? I don't need a lawsuit. Pardon? I don't need a lawsuit, I guess. Yes, Judge Olley, that's one potential answer. And in framing that, I want to address a legal part of your question and a sort of practical part of your question. Legally, the consent decree and later the correction action order was our effort to agree with plaintiffs on a set of narrow, specifically identifiable sets of conduct that we had to do to resolve the dispute. We dispute whether there's even a private right of action under the statute, but we settled that, we've agreed to do certain things, and now we've done them. As a more pragmatic matter, if there is some sort of systemic dysfunction in the system, there are mechanisms for beneficiaries of this program to complain, but it's not through this lawsuit, specifically through this consent decree. There's a federal agency, the Center for Medicaid and Medicare Services, CMS, that under the statute we have to give quarterly reports to of our compliance, and they determine whether the state's program is in compliance. And if it's not, they have the authority to threaten to or withhold money from the state, and those federal funds are very important to the state in implementing this program. And the Supreme Court, in a case that's not cited in the briefs, but it goes to this point about the federal agency's expertise called Douglas v. Independent Living Center from 2012, 132 Supreme Court Reporter 1204, recognized in the context of the Medicaid statute that that agency, quote, is comparatively expert in the statute's subject matter. So my point is that even though we settled this lawsuit by agreeing to do things, if you have concerns about systemic dysfunction, there are other mechanisms to address that. But what's appropriate here is to let the state officials go back to having the latitude they require to adapt and conform to current circumstances like any other state in this country has in implementing a federal law cooperatively with the federal government. Under Prong 1 of Rule 65b, it's enough and sufficient to show that we have satisfied everything we were required to do to settle the lawsuit. The district court correctly found that after a careful review of the evidence. Its findings are not clearly erroneous, and its finding can be affirmed on that basis alone.  JUSTICE KENNEDY Well, before you leave, how does your answer Judge Jolly's question to counsel opposite, what does effectively mean? How do you know if it's effectively communicated if it didn't work? Well, I have two points on that as well. And the first is that at some point there are diminishing returns to trying to define words like effectively that are perhaps somewhat open-ended. But rather than trying to define them, what the district court did here was it looked at all of our communications to the pharmacist. It looked at the message that the pharmacist get on their computer screen when they're typing in a prescription that tells them to contact their prescribing doctor for prior approval or to issue a 72-hour supply. This is the sort of application issue that the district court needs to be close on the ground to. And that's why on this cold record we can't find any error, much less clear error in its findings, that we implemented a program. And the second point is that the decree itself only requires that we implement an initiative for effectively affirming, which we've done. And I think I heard Mr. Garrigan say that the corrective action order in 2007 was, in fact, intended to settle our disputes about what exactly is an effective program for informing the pharmacist. And the district court walked through each of the 12 bullet points in that corrective action order. But I will lastly say, Judge Wiener, that this gets to my avoidance point, that when a court is interpreting somewhat open-ended terms in a consent decree, it should consider the Supreme Court's imperative in Horn v. Flores that it's improper for a consent decree to go beyond addressing violations of Federal law or conditions that flow from those violations. And so there should be an avoidance canon there the same way that this court interprets statutes and contracts. When there are permissible readings, it interprets them not to require a lawful or illegal results. The same sort of canon should apply in interpreting the decree and corrective action order here. Okay, Mr. Barker, thank you very much. We now will hear from Mr. Garrigan. Thank you. First, there's no mistake about it. In this case, there is plenty of evidence, including the assessments required by the decree, that show the vast majority of the defendant's pharmacists are not following the policy to provide prescription drugs. Seventy-five percent of their high-volume pharmacies were not providing the 72-hour prescriptions as much as expected or at all. We're talking about a huge problem with the pharmacists here. They might not be complying, but you're not saying they weren't advised. The information wasn't communicated to them of the requirement to provide 72-hour pills. Well, a lot of information was provided to them about their ability to provide 72-hour prescriptions. They never told them, and this is also important, what we looked at is the supposed intensive educational effort. Now, there are lots of other efforts going on. They use e-mails, faxes, all kinds of letters, meetings, all kinds of things. But for their intensive effort, they sent out a letter. That's not intensive, I don't think. And it also did not mention that it was the pharmacists that must provide the prescription. That's not mentioned. Well, that's what the consent decree says. I mean, it spells out what effective information or informing or communication is. And then it says mail one and at least one mail out to all pharmacists. So they did the one mail out that you consented to. No. They were already required to do a mail out to all the pharmacists. In addition, they were—and they did that. In addition, they were required to do this intensive educational effort, which their response to—it was supposed to be targeted to the problem pharmacists, which turns out to be most of them. The problem is they never told the pharmacists that it is their obligation to provide that 72-hour prescription. Are the pharmacists subject to enforcement authorities other than this consent decree? The pharmacists aren't responsible for the consent decree. They are subject to contract enforcement because the state has contracts with them. Okay. Now, another point I want to get to that's very important and was touched on. You know, this court, as you know, it's been to—excuse me, this case has been to this court several times. It's been up to the Supreme Court and back. This court, the district court, the Supreme Court— This is a large consent decree, right? And are we talking about just this provision? Are there many provisions of the— Many provisions. Many times. Okay. Many provisions. And all of those provisions are still in effect as far as this appeal is concerned. This appeal only affects these, and whatever is left down there is still there. The—well, I don't—whether or not the other provisions are in effect, the fact is the court always told the defendants they were supposed to use the equitable clause of Rule 60b-5 if they wanted to change the decree. And they've rejected that advice. Instead, they went to the first prong about having satisfied the decree. In order to do that, they have to do exactly that. They have to be able to show they have satisfied the decree. Any reading of contract interpretation would say that all of these provisions, specific provisions that we're talking about, have to be interpreted in light of the objectives of the decree. And again, I refer the court to the Jeff D. case out of the Ninth Circuit, where it was not enough for somebody to describe what their actions were. The court, the district court, has to explicitly address why, you know, how those actions complied with the objectives of the decree. That has not been done here. All they have addressed is their specific actions. Okay. Thank you very much, Mr. Carr. We have the case.